59 481
128a 679

FREDERICK W. BLOSSOM, Respondent, *v.* SPENCER P. SHOTTER, Appellant.

*Sales — executory contracts of sale of personal property — the title does not pass if anything remains to be done by the vendor.*

Where anything remains to be done by a vendor of merchandise to put the same in a deliverable shape, so that the purchaser has an option to refuse to accept the goods in case such thing is not done, no title passes.

The only exception to this rule exists in the case in which goods are sold by weight or measure, resorted to in order to fix the price.

Appeal by the defendant Spencer P. Shotter from a judgment, entered in the office of the clerk of the county of New York on the 30th day of June, 1890, in favor of the plaintiff; and also from an order, entered in said office on the 25th day of June, 1890, denying defendant's motion for a new trial and granting to plaintiff an extra allowance, after a trial at the New York Circuit before the court and a jury, at which a verdict was rendered in favor of the plaintiff for $674.19.

*James Byrne,* for the appellant.

*Hobbs & Gifford,* for the respondent.

Van Brunt, P. J.:

This action was brought to recover damages for the breach of an alleged contract for the sale of 1,500 barrels of rosin, to be delivered free on board the plaintiff's vessel in the port of Savannah.

The contract was entered into by telegrams and correspondence; and the question presented is, whether the contract of sale was executed or executory.

The first telegram bearing upon the question was sent by the plaintiffs to the defendants at Savannah, and is as follows:

"New York, *February* 19th.

"S. P. Shotter & Co., *Savannah:*

"Make lowest possible offer, good two days, 1,500 M., f. o. b. my vessel 'Savannah.' Answer immediately.

"F. W. BLOSSOM."

The defendants answered by telegram as follows:

"Savannah, Georgia, *February* 19, 1886.

"To F. W. Blossom, 140 *Water street, New York, N. Y.:*

"Three ten, f. o. b. here, for reply to-morrow afternoon.

"S. P. SHOTTER & CO."

On the same day the defendants wrote to the plaintiff, stating as follows:

"Yours of the 17th inst. received, also telegram of even date. To the latter we replied, offering 1,500 'M' rosin at $3.10, f. o. b. your vessel here, if reply by to-morrow evening. We make the tempting offer with a view to closing out all we have."

On the twentieth of February the plaintiff wrote to the defendants that their offer was not accepted. On the twenty-third the plaintiff telegraphed the defendants: "Your offer 1,500 'M' accepted, telegraph confirmation immediately."

On the same day the defendants telegraphed to the plaintiff "We confirm sale to you of 1,500 'M' at $3.10 f. o. b. Savannah."

Upon the same day the plaintiff wrote to the defendants at Savannah the following letter:

"New York, *Feb.* 23, 1886.

"Messrs. S. P. Shotter & Co., *Savannah, Ga.:*

"Dear Sirs.— Your favor of the 19th inst. to hand and noted. This morning the 1,500 'M' matter came up again and, after much trouble, I succeeded in getting the bid for a few hours, and wired you accepting the lot, etc., my telegram probably reaching you at same time as my letter of Saturday, 20th of Feby. Later in the day I received your reply confirming the sale, and the matter now is closed by a sale to me of 1,500 bbls. 'M' rosin at $3.10, f. o. b. my vessel in Savannah, less 2½%, sight draft against documents as shipped. The vessel will report at Savannah within the next thirty to forty days. She may turn up in ten days. I will give you five days' notice. I have no doubt but that she will go direct to the wharf, so you will have very small expense putting on board. An inspector's certificate, such as you give on foreign cargoes, will be necessary. Paterson came very near getting the order; he was but a cent or so above me.

"I note your market has declined to $3.00 on 'M,' $2.20 on 'K.' Will also need about 200 samples when shipment is made.

"Yours truly,

"F. W. BLOSSOM."

On the twenty-fifth of February the defendants wrote to the plaintiffs a letter, of which the following is a portion:

"SAVANNAH, *Feb.* 25th, 1886.

"F. W. BLOSSOM, Esq., *New York:*

"DEAR SIR. — Your favor of 23d is at hand and we note what you say as to the time and manner of shipping of the 1,500 bbls. 'M' sold by us on the 23d inst. at 3.10 per 280 f. o. b. here.   As no time was mentioned for shipment, it was of course understood to be immediate and not future, so if we have to carry it for the buyer's vessel we will have to charge the actual expenses, *i. e.,* storage, interest and insurance.   Our object in making such a low price at the time was to make a quick turn, and we are much disappointed."

And said letter also contained objections, upon the part of defendants, to some of the terms made by the plaintiff in his letter of the twenty-third.   Thereupon the plaintiff wrote a letter on the twenty-seventh of February, in which he claimed that the wording of his telegram indicated that the shipment was not to be prompt, and that his margin of two and a half per cent would not admit of his paying any charges.   The letter also contains a direction that they should forward to him the weights, invoices, certificates and shipping receipts to New York, attached to the draft; all the papers, without exception, to be in his name.   The letter also contained a provision that if plaintiff did not hear from defendant by wire on Monday, it would be understood that all the terms stated by him were agreed to.

On the second of March the defendant wrote to the plaintiff as follows: "We did not wire yesterday as we concluded to accept your stipulations, although we do not think the ground well taken. 'F. o. b., your vessel in Savannah,' does mean prompt shipment, providing no future date is mentioned."

On the fourth of March the plaintiff wrote to the defendant as follows: "Your favor of the 2d inst. is to hand and I note that

the 1,500 bbls. ' M ' order is accepted, and will be held, awaiting the arrival of the vessel. This rosin must be, every bbl., as originally sampled, ' M,' and deliver such lots as the local inspectors will be willing to give their certificates for as having originally graded 'M.' If a small fee to them is necessary to obtain this paper I will pay it."

And on the sixth of March the defendants wrote to the plaintiff, " We will furnish an inspection certificate for the 1,500 barrels ' M ' rosin." On the fifth of April the plaintiff telegraphed to the defendants, " Where shall vessel call to receive 1,500 ? wire reply immediately." On the next day the defendants telegraphed, " Contract expired by limitation." No vessel arrived at Savannah before the tenth of April, and the forty days from the twenty-third of February, the date of the plaintiff's letter expired on the fourth of April.

Upon this state of facts, rosin having risen, a verdict was directed in favor of the plaintiff, and from the judgment thereupon entered, and from an order denying a motion for a new trial this appeal is taken.

There are two grounds upon which it is insisted by the appellant that there was no executed contract of sale. The first is that there was no specification or identification of any particular 1,500 barrels of " M " rosin; and the second that it was not the intention of the parties that the title should pass.

It does not seem to us at all necessary to consider separately the first ground, because this appeal may be disposed of upon the second, which includes the first. And it seems to us that this is conclusively established, because there can be no question but that if the defendants tendered to the plaintiff 1,500 bbls. " M " rosin which they had bought the day after the contract had been made it would have been a good tender. If this is true, then it could not have been the intention of the parties that there should be a present passing of the title at the time the contract was entered into. It is said that this conclusion is at variance with the language used by the defendants in their letter of February nineteenth, in which they say, " We make the tempting offer with the view of closing out all we have." But this was no statement that they had 1,500 barrels of rosin on hand such as would fulfill the terms of the contract. They did not offer 1,500 barrels to the plaintiff, but the plaintiff telegraphed to know what was the lowest possible offer of sale they would make for a

given quantity of rosin, viz., 1,500 barrels. It was the plaintiff that fixed the number of barrels that he, desired to buy, and not the defendants the number of barrels they desired to sell.

If they had had but 1,000 barrels on hand the letter would have been entirely true, because they might very well, in order to fill the order, have intended to go into the market to procure the remainder. And their letter of the twenty-fifth is entirely consistent with the idea that they were not selling what they had on hand, but were going into the market to purchase, because they say, in protest against being required to hold the rosin for thirty or forty days awaiting the arrival of the vessel, " Our object in making such a low price at the time was to make a quick turn and we are disappointed." This language clearly implies the fact that they expected to go into the market to purchase some portion of this rosin, if not the whole, and the evidence shows that they had not on hand any 1,500 barrels of rosin.

But the intention of the parties is further shown by their correspondence in respect to the expenses attending the holding of this merchandise. In the letter of the twenty-fifth the defendants say : " If we have to carry it for the buyer's vessel we will have to charge the actual expenses, *i. e.*, storage, interest and insurance." In reply to this the plaintiff says, among other things : " My margin of two and one-half per cent will not admit of my paying any charges." Now, if this property was to be the plaintiff's at the time of the entering into this contract of sale, why should the defendants pay insurance, interest and storage?

If this rosin had been destroyed prior to the expiration of the forty days and the expiration of the contract, and the defendants had attempted to hold the plaintiff for the purchase-price of the rosin, it is clear that they could not have recovered under such a contract as this. It is a familiar principle that if anything remains to be done by a seller of merchandise to put the same in a deliverable shape, so that the purchaser has an option of refusal to accept, in case such things are not done, no title passes. And the only exception to this rule is that where goods are sold by weight or measure, the exact quantity may be ascertained in order to fix the price to be paid.

In the case at bar certificates were provided for, and the plaintiff

might refuse to accept the rosin, if unaccompanied with these certificates; and he himself stated that if the rosin was not so accompanied when tendered for delivery he would not have accepted the same. Now, if it was his property, and he had bought it and the title was his, why would he not take it? He would not take it because the title was never in him, and because, by the terms of the contract, he had never accepted the property as a compliance with the contract, and need not do so unless accompanied by these certificates.

It is urged that even if the contract should be considered as executory the defendant was not relieved from the obligation to deliver upon the ground that before the defendants could forfeit the rights of the plaintiff thereunder the obligation rested upon them to give notice to plaintiff requiring performance within some reasonable time, and that no such notice was ever given. And it is urged that the statement in the plaintiff's letter of February twenty-third, that the vessel would report at Savannah within the next thirty or forty days, and might in ten days, was not a condition precedent, but was made not prior but subsequent to the contract, and was a general statement for the information of the defendants. That this is not the case is clearly established by the evidence; the defendants claiming that the telegram meant prompt delivery, and that they were striving to obtain a contract for prompt delivery, and finally they receded from their proposition and accepted the condition that the vessel would report at Savannah within the next thirty or forty days, they to be at the expense of storage, etc, until the vessel had reported. It was clearly the intention of the parties, in view of these explanations, that this vessel should be there within the period named, and that was one of the conditions of the contract. And the defendants owed no obligation to the plaintiff except to wait for the expiration of the time, and after the time expired in which the plaintiff agreed to have his vessel there, they were absolved from completion of the contract.

The claim that by the letter of the fourth of March, in which the plaintiff stated "I note that the 1,500 bbls. 'M' order is accepted and will be held awaiting the arrival of the vessel," in no way militates against this theory. He did not refer to the indefinite arrival of the vessel, but to its arrival within the forty days, which was the

utmost limit for which the plaintiff had asked the defendants to hold the rosin for the purpose of delivery.

It is urged that, even if it should be held that time was of the essence of the contract, the forty days should be computed from the time the stipulations were all agreed to, and, as the defendants wrote on the second of March, "we concluded to accept your stipulations," that the time was to run from the second of March. This is not the contract. The plaintiff did not state that the vessel would report at Savannah within thirty or forty days from the second of March, but stated that it would report within thirty or forty days from the twenty-third of February, because, in his letter of that date, he says "the vessel will report at Savannah within the *next* thirty to forty days." How it is possible to import the second of March into such a condition it is difficult to imagine. It is probably true that the contract was not finally terminated until the second of March; but part and parcel of the stipulations was the agreement upon the part of the plaintiff to have his vessel there within forty days from the twenty-third of February.

We think, therefore, that, upon the undisputed evidence, the contract was an executory contract, and that the time for its completion on the part of the plaintiff having arrived, and he not having performed his part of the contract, the defendants were absolved from performing theirs, and no right of recovery existed in the plaintiff by reason of the non-delivery of this rosin.

The judgment should be reversed and a new trial ordered, with costs to appellant to abide the event.

BRADY and DANIELS, JJ., concurred.

Judgment reversed and new trial ordered, with costs to appellant to abide event.